UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| David Troyer, | Case No. 2:19-cv-01056-APG-DJA |
| Plaintiff, | |
| v. | **Order** |
| Liberty Mutual Insurance Company, et al., | |
| Defendants. | |

This is an insurance bad faith action arising out of an ATV rollover accident. Plaintiff David Troyer sues Defendants Liberty Mutual Insurance Company, Liberty Mutual Corporation, and LM General Insurance company for, in part, their failure to provide sufficient underinsured motorist coverage. (ECF No. 1). Plaintiff moves to strike Defendants' answer, arguing that Defendants and their counsel have been unreasonably unresponsive and uncooperative in conducting discovery. (ECF No. 33). Because the Court finds that Plaintiff has demonstrated sanctionable conduct, but that case dispositive sanctions are not warranted, it grants the motion in part and denies it in part. The Court finds these matters properly resolved without a hearing. LR 78-1.

**I.    Background.**

Plaintiff and his wife joined their friends to ride their ATVs on a dry lakebed on December 12, 2018. (ECF No. 33 at 12). Plaintiff's wife was riding as a passenger in Plaintiff's ATV while it was being driven by third-party Emily Balanay. *See id.* Balanay accelerated and made a sharp turn, causing the ATV to flip and roll, causing Plaintiff's wife severe injuries and resulting in the amputation of her right forearm. *See id.* Balanay's insurance was insufficient to compensate Plaintiff's wife's medical bills, past and future pain and suffering, future medical

treatment, or Plaintiff's psychological and emotional damage. *See id.* On April 24, 2019, Defendant denied Plaintiff coverage.[1] *See id.* at 14.

### A.   Timeline of the parties' participation in discovery

Along with the facts underlying the claims in the lawsuit, Plaintiff's and Defendants' explanation of the discovery timeline displays a troubling lack of communication from Defendants.

| Date | Description |
|---|---|
| May 6, 2021 | Plaintiff's counsel calls Defendants' counsel to discuss Defendants' responses to written discovery and depositions. Plaintiff's counsel continues to call Defendants' counsel for two weeks with no response. (ECF No. 33 at 14-18). However, Defendants' counsel—Michael Dissinger—asserted in his declaration that he did not receive daily calls or voicemails. (ECF No. 35-2 at 4). |
| May 11 or 20, 2021 | Defendants' counsel asserts that he and Plaintiff's counsel spoke regarding depositions on May 11, 2021. *See id.* Plaintiff's counsel asserts that he did not reach Defendants' counsel until May 20, 2021. (ECF No. 33 at 14-18). |
| May 12, 2021 | Defendants' counsel asserts that he received an email from Plaintiff's counsel accusing him of failing to communicate for two months, despite the call the day before. (ECF No. 35-2 at 4). Defendants' counsel does not explain whether he responded to this email. |
| May 26 or 27, 2021 | The parties meet and confer to discuss depositions. *See id*; (ECF No. 33 at 14-18). |
| June 7 or 10, 2021 | The parties meet and confer to discuss depositions and come to a tentative agreement to take depositions of Brant, Katharine Houlihan, and Defendants' 30(b)(6) witness on July 21, 2021. *See id.* Plaintiff's counsel requested Defendants' help in reaching Brant and Houlihan. *See id.* Defendants' counsel appears to assert that this communication took place on June 10, 2021 and that in that meeting, he discussed that Houlihan—as a 30(b)(6) |

---

[1] Plaintiff adds certain facts related to his bad faith claim against Defendants, including his allegation that a representative of Defendants impermissibly contacted him—and not his attorney—while he was represented. However, because these facts have no bearing on the motion for sanctions, the Court will not address them here.

| | | |
|---|---|---|
| | | witness—needed to appear remotely. (ECF No. 35-1 at 2-3). |
| | June 14, 2021 | Plaintiff's counsel served deposition notices for Brant, Houlihan, and Defendants' 30(b)(6) witness via mail and sent courtesy copies to Defendants' counsel via email. (ECF No. 33 at 14-18). These notices included a notice for a 30(b)(6) designee, Houlihan, and Brant. *See id.* at 50. Defendants' counsel asserts that there was no "specific understanding Ms. Houlihan would also serve in the capacity as the representative witness." (ECF No. 34 at 6). The notices for Houlihan and Brant were for remote depositions, the notice for the 30(b)(6) witness specified that the deposition would be in person. (ECF No. 35-2 at 5). |
| | June 21, 2021 | Plaintiff's counsel emailed Defendants' counsel asking for help in reaching Brant and Houlihan. (ECF No. 33 at 14-18). Plaintiff's counsel did not receive a response. *See id.* Between June 21, 2021 and July 20, 2021, Plaintiff's counsel sent ten follow up emails, none of which were acknowledged. *See id.* |
| | July 20, 2021 | Defendants' counsel called Willoughby—who was out of town for his wedding—and emailed Saggese, stating that Brant would be available for a deposition on July 29th or 30th and that Houlihan could be available on August 5th or 6th without a subpoena. *See id.* Defendants' counsel added that Houlihan "is available to appear in her individual capacity and as a representative (30(b)(6)) witness on either of those dates." *See id.* at 60. Plaintiff asserts that this was the first time that Defendants' counsel disclosed that Houlihan would be the 30(b)(6) witness.[2] *See id.* at 79. Defendants' counsel did not acknowledge the previously unanswered emails. *See id.* at 60. |
| | July 21, 2021 | The in-person 30(b)(6) deposition went forward as a non-appearance. *See id.* at 14-18. The remote deposition of Brant went forward. *Id.* The deposition of Houlihan went forward as a non-appearance. *See id.* Houlihan appeared remotely because, as Defendants' counsel explains, he had |

---

[2] Defendants disputes this assertion but provides no written confirmation that they had established Houlihan as the 30(b)(6) witness. Compared with Plaintiff's counsel's emails—one of which Defendants' counsel responded to, confirming that he understood that Plaintiff wished to depose a 30(b)(6) witness who was not Houlihan—and notices, Defendants' counsel's assertions that the parties had previously discussed deposing Houlihan in a 30(b)(6) capacity is unconvincing. (ECF No. 33 at 46, 50, 60, 83, 86, 88, 89, 91, 99, and 104).

|   |   |   |
|---|---|---|
|   |   | informed Plaintiff that Houlihan would be appearing as the 30(b)(6) witness.  (ECF No. 35-1 at 4).  It appears that Houlihan appeared via a Zoom link that Defendants' office sent Plaintiff's counsel without context on the day of the deposition, to which Plaintiff's counsel responded via email "It is not by Zoom.  It is an in-person deposition.  Why did you send that out?"  (ECF No. 33 at 74-75).  Defendants' office did not respond to that email.  *See id.*  Regarding why Plaintiff's counsel did not believe Houlihan to be a proper 30(b)(6) witness, Plaintiff's counsel put on the record at the non-appearance that she: "is not a viable or legitimate 30(b)(6) witness, as she is a percipient witness herself in this case, who herself was engaged in misconduct in the underlying case.  The evidence of this is in the transcript of Katherine Houlihan's discussion with the at-fault party, Emily Balanay…Katherine Houlihan was providing her advice and counsel against her own insured, my client [Plaintiff and his wife]."  *Id.* at 76-79. |
|   | July 23, 2021 | Defendants' counsel sent Plaintiff's counsel a letter asserting that Houlihan is an appropriate 30(b)(6) witness and asking Plaintiff's counsel to provide authority to support Plaintiff's counsel's objection.  (ECF No. 35-14). |
|   | July 29, 2021 | Plaintiff's counsel called Defendants' counsel and both parties agreed that, unless the case resolved, the 30(b)(6) deposition and the deposition of Houlihan would go forward on August 20, 2021.  (ECF No. 33 at 14-18). |
|   | July 30, 2021 | Plaintiff's counsel sent a confirming email regarding the deposition of Houlihan and the 30(b)(6) witness to be held on August 20, 2021 to Defendants' counsel.  *See id.*  Defendants' counsel responded to confirm and stated "I need to confirm witness availability" but otherwise did not mention Plaintiff's counsel's statement that the 30(b)(6) deponent was to be determined.  *See id.* at 83.  Defendants' counsel characterized Plaintiff's counsel's email as "unilaterally cancelling the depositions set for August 5, 2021 and August 6, 2021" and that the August 20, 2021 date was "unilaterally selected by Mr. Saggese."  (ECF No. 35-1 at 7). |
|   | August 3, 2021 | Plaintiff's counsel emailed Defendants' counsel that, if the case did not resolve, then Plaintiff wanted to take the deposition of Brant's supervisor.  (ECF No. 33 at 14-18).  Defendants' counsel did not respond.  *See id.* |

| | | |
|---|---|---|
| | August 10, 2021 | Plaintiff's counsel emailed Defendants' counsel again about the possible deposition of Brant's supervisor and requested that Defendants' counsel confirm receiving emails. *See id.* Defendants' counsel did not respond. *See id.* |
| | August 13, 2021 | Plaintiff's counsel emailed Defendants' counsel again, asking them to confirm receipt of emails. *See id.* Defendants' counsel did not respond. *See id.* |
| | August 16, 2021 | Plaintiff's counsel emailed Defendants' counsel again, explaining that if the case had not settled, the 30(b)(6) deposition and Houlihan's deposition would be going forward in four days. *See id.* Plaintiff's counsel also asked Defendants' counsel to provide the identity of the 30(b)(6) witness. *See id.* Defendants' counsel did not respond. *See id.* |
| | August 17, 2021 | Plaintiff's counsel sent Defendants' counsel more than twenty emails asking them to respond. *See id.* |
| | August 18, 2021 | Defendants' counsel responded via email without referencing the unanswered emails or the depositions that were set to take place in two days. *See id.* Rather, Defendants' counsel stated that he "did not have anything definitive to report," without context, but apparently discussing the possibility of settlement. *See id.* This same day, Plaintiff's counsel personally hand-delivered deposition notices for August 20, 2021 for the 30(b)(6) witness and Houlihan to Defendants' counsel's office. *See id.* |
| | August 20, 2021 | Defendants' counsel sent Plaintiff's counsel a letter one hour before the deposition was set to begin, stating that the deposition notices were defective.[3] *See id.* The depositions went forward as non-appearances. *See id.* |
| | August 25, 2021 | Defendants' counsel sent Plaintiff's counsel another letter, asking Plaintiff's counsel to respond to Defendants' offer of judgment. (ECF No. 35-6). Defendants' counsel added that, if Plaintiff chose to reject the offer of judgment, "deposition of Ms. Houlihan in all of her capacities can be coordinated to proceed in short order if you are in agreement with her remote appearance." *Id.* |

---

[3] The letter contains other arguments, which, because they do not impact the Court's decision, the Court will not address here. (ECF No. 33 at 106-107).

August 26, 2021                Plaintiff's counsel filed the instant motion.

### B.     *Plaintiff's motion to strike Defendants' answer.*

Plaintiff asserts in his motion that, due to Defendants' counsel's failure to communicate effectively and in good faith, case terminating sanctions are appropriate. (ECF No. 33 at 20). Plaintiff relies on Federal Rule of Civil Procedure 37(b)(2)(A), which outlines sanctions appropriate to deposition non-appearances. *See id.* Under the Nevada Supreme Court's factors, Plaintiff asserts that: (1) Defendant has acted willfully in not responding to communications and failing to show up for depositions; (2) that Plaintiff would be severely prejudiced by a lesser sanction because Plaintiff has already had his case delayed, has wasted resources litigating the case and setting up depositions, especially with limited resources to litigate against a large company; (3) less severe sanctions will not change the fact that Plaintiff will have to extend discovery and the case; (4) the sanction would not prejudice Defendant because "Plaintiff does not believe that Defendants' counsel is personally or individually responsible for the deceptive and dilatory discovery tactics. Plaintiff believes that the blatant disrespect…comes directly from Corporate Liberty Mutual." *See id.* at 22-24.

In response, Defendant asserts that Plaintiff has "twisted and re-characterized the circumstances." (ECF No. 34 at 3). For example, Defendant asserts that Plaintiff unilaterally set and cancelled depositions, rather than working together with Defendant to schedule them. *See id.* at 4-11. Regarding Houlihan's deposition, Defendant claims that that Plaintiff changed his position that Houlihan could appear remotely and now "contends without any basis Ms. Houlihan's separate personal appearance is required for her representative witness capacity." *Id.* at 3. According to Defendant, this is an attempt to coerce Defendant to nominate a different 30(b)(6) witness. *See id.* at 11. Defendant believes that Plaintiff is using discovery to prompt settlement negotiations and, to that end, agreed to suspend discovery to negotiate and then improperly resumed depositions by hand delivering notices. *See id.* at 8-9. After sending a letter following the cancelled August 20, 2021 depositions, Defendant claims that Plaintiff improperly

did not respond and failed to meet and confer before bringing the instant motion.[4]  *See id.* at 9-10, 15.  Under the Ninth Circuit's five-part test—which Defendant claims is proper, rather than the Nevada test—Defendant argues that Plaintiff has not demonstrated the key factors of prejudice or the unavailability of lesser sanctions.  *See id.* at 12-13.  Defendant claims that Plaintiff has not suffered prejudice because it was Plaintiff who refused to proceed with depositions and Plaintiff is unilaterally demanding that Defendant provide a separate 30(b)(6) witness in person.  *See id.*  Defendant asserts that lesser sanctions are available because Houlihan is willing to appear remotely for deposition.  *See id.* at 13-14.  Finally, Defendant accuses Plaintiff of attempting to increase litigation costs.  *See id.* at 16-17.

In reply, Plaintiff accuses Defendant of ignoring the "countless attempts to establish communication by Plaintiff," asserted in his motion.  (ECF No. 36 at 3).  Plaintiff explains that he laid out the extensive and detailed factual scenario underlying the non-appearance depositions and the failed attempts at scheduling a 30(b)(6) witness.  *See id.* at 3-4.  But Defendant did not address or rebut these details.  *See id.*  Plaintiff provides proof that Defendants' counsel has been receiving emails but has been ignoring them.  *See id.* at 5.  Finally, Plaintiff reasserts that Defendants' silence warrants striking the answer.  *See id.* at 6.

**II.     Discussion.**

   ***A.  The Court applies Federal law to determine sanctions.***

The Court may impose sanctions either under Rule 37 or its inherent authority.  *See IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."  *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (quoting *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).  Federal courts apply federal law when addressing sanctions, regardless of whether it is using its inherent authority or Rule 37.  *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).  Here, although Plaintiff

---

[4] Defendant also cites other portions of discovery, including document disclosures and extensions, to assert that they have participated in discovery. (ECF No. 34 at 10-11).  However, because these arguments do not have a bearing on the discovery disputes at issue, the Court does not address them.

applies Nevada law in making its arguments for sanctions, the Court applies Federal law in determining sanctions.

### B.       Sanctions are warranted.

Federal Rule of Civil Procedure 37(d)(1)(A) authorizes the Court to impose sanctions when a party fails to appear for a deposition. *See* Fed. R. Civ. P. 37(d)(1)(A)(i). The failure to appear is not excused on the ground that the discovery sought was objectionable unless the party failing to act has a pending motion for a protective order. *See* Fed. R. Civ. P. 37(d)(2). The Court will first determine whether a discovery violation occurred and second, what sanction is appropriate, if any. *See Greene v. Wal-Mart Stores, Inc.*, No. 2:15-cv-00677-JAD-NJK, 2016 WL 829981, at *4 (D. Nev. Jan. 26, 2016). The Court has "great latitude" in fashioning sanctions. *See Lew v. Kona Hosp.*, 754 F.2d 1420, 1425 (9th Cir. 1985).

Here, sanctions are warranted because Plaintiff has demonstrated a pattern by which Defendants ignore Plaintiff's communications leading up to a deposition and then, at the last minute, either object or assert new facts. Defendants' counsel disputes some of the phone calls leading up to the first round of depositions set to take place on July 21, 2021. But they do not dispute that their office received copies of Plaintiff's notices of deposition, that they did not respond to emails between June 21, 2021 and July 20, 2021, and that the day before the depositions, Defendants provided dates for the deponents, ignoring the notices of depositions and missed communications. Defendants' argument that Plaintiff unilaterally decided the deposition date and failed to cooperate in picking a date is belied by Plaintiff's assertion that counsel discussed July 21, 2021 as a tentative date on June 7th or 10th and that Defendants' counsel never objected to the notices. Nor do Defendants explain the month of silence that preceded the deposition or their last-minute revelation that Houlihan would be the 30(b)(6) witness. Even though Houlihan remotely appeared on July 21, 2021, Plaintiff was reasonable in not proceeding with the deposition where his counsel did not previously know the identity of the 30(b)(6) witness or that the witness would be an existing fact witness.

While Plaintiff's counsel did not respond to Defendants' July 23, 2021 letter asking for authority why Plaintiff objected to Houlihan as a 30(b)(6) witness, Plaintiff's counsel provided

his arguments in an email and on the record at the continued deposition. Moreover, just a few days later, on July 29, 2021 counsel for both parties discussed rescheduling the deposition and that both the 30(b)(6) witness deposition *and* the deposition of Houlihan would go forward. Defendants' counsel even confirmed that the two depositions would be separate when he responded to Plaintiff's counsel's follow up email outlining the call. Defendants' counsel also confirmed that the depositions on August 5th and 6th would be rescheduled when he responded to Plaintiff's counsel's follow up email, but now argues that Plaintiff "unilaterally cancel[ed]" these depositions. (ECF no. 35-1 at 7).

Once the depositions for Houlihan and the 30(b)(6) witness were re-set for August 20, 2021, Defendants' counsel once again went silent. In the days leading up to the deposition, Plaintiff asked about another possible deposition, asked Defendants' counsel to confirm receipt of emails, and asked for the identity of the 30(b)(6) witness. Defendants' counsel did not respond until August 18, 2021, stating that he had "nothing definitive to report" without context and without acknowledging the other, unanswered emails. Plaintiff hand-delivered deposition notices that same day, which Defendants now characterize as unilateral and improper even though they noticed depositions for an agreed-upon day and agreed-upon witnesses. Defendants also did not oppose these notices right away—even though the deposition was approaching—but waited until one hour before the deposition to send a letter claiming that the notices were defective. After the depositions again went forward as non-appearances, Defendants then sent a letter, unilaterally providing new deposition dates and discussing an offer of judgment. Defendants now claim Plaintiff was unreasonable to ignore this letter and file a motion.

In response to Plaintiff's motion setting forth a detailed timeline of events, Defendants offer only broad assertions that Plaintiff failed to keep promises, unilaterally set dates, and unreasonably cancelled depositions. But Defendants mischaracterize events. Defendants' failure to properly oppose depositions, adequately communicate, and to provide witnesses for depositions is sanctionable.

### C. Failure to certify a meet and confer is not dispositive.

A party filing a motion for sanctions must certify that the movant met and conferred in good faith with the party failing to act to obtain the answer or response without court action. *See* Fed. R. Civ. P. 37(d)(1)(B). Here, however Plaintiff has demonstrated a pattern of non-responsiveness. Plaintiff was reasonable to assume that a request for a meet-and-confer would be met with similar silence. That Plaintiff did not certify that his counsel met and conferred with Defendants' counsel is not dispositive of this motion.

### D. The Court will not impose case-dispositive sanctions.

Sanctions for failing to appear at a deposition may include striking the pleadings. Fed. R. Civ. P. 37(b)(2)(A)(iii). In determining whether case dispositive sanctions are appropriate, "[a] court must consider the following five factors before striking a pleading or declaring default: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Hester v. Vision Airlines*, 687 F.3d 1162, 1169 (9th Cir. 2012) (quotation omitted). "[T]he key factors are prejudice and availability of lesser sanctions." *Id.* The Ninth Circuit has found that the element of prejudice is essential, and "sanctions [that] threaten or interfere with the litigants' claim or defenses violate due process when they are imposed 'merely for punishment of an infraction that does not threaten to interfere with the rightful decision of the case.'" *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

Here, case dispositive sanctions are not warranted. First and second, although the public's interest in expeditious resolution of the case and the Court's need to manage its docket both weigh in favor of dispositive sanctions, they are outweighed by the other three factors. Third, it is unclear to the Court whether the conduct at issue is attributable to Defendants or their counsel. While Defendants do not explain these delays in their brief, without more, the Court cannot impose case dispositive sanctions without risking prejudice to Defendants for conduct of which they may not have been aware. Fourth, imposing case dispositive sanctions will mean that the case is not determined on its merits. Balancing this fact with the fifth factor, the Court finds that

lesser sanctions are available to avoid this result and address Plaintiff's concerns. Plaintiff explains that he has been prejudiced by significant delay and expense in the litigation. The Court agrees but does not find these prejudices incurable by other methods such that dispositive sanctions are the only available. The Court thus denies Plaintiff's request for case dispositive sanctions but imposes lesser sanctions.

> **E.     Defendant must pay for the missed depositions and produce Houlihan and a 30(b)(6) witness on an agreeable date.**

"Instead of or in addition to [the available sanctions for non-appearance], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The Court's power to sanction also extends beyond the enumerated rules and includes the inherent authority to manage its docket to permit the orderly, expeditious rendition of cases. *See*, *e.g., In re Keegan Management Co. Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). This inherent power includes the ability "to sanction a party for abusive discovery conduct" that "unreasonably delays the discovery process." *Hackett v. Segerblom*, No. 2:06-CV-01081-JCM-GWF, 2007 WL 2254708, at 4 (D. Nev. Aug. 3, 2007) (citing *Leon v. IDX Systems*, 464 F.3d 951 (9th Cir. 2006)). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Alutiq v. OIC Marianas Ins. Corp.*, 305 F.R.D. 618, 628 (D. Nev. Mar. 13, 2015) (quotations omitted).

Here, the Court follows Rule 37 to find that monetary sanctions are appropriate and uses its inherent authority to order that Defendants provide a 30(b)(6) witness who is not Houlihan. There is nothing to suggest that Defendants' failure to communicate regarding these depositions or to properly object to them was substantially justified or that there are extenuating circumstances that make an award of expenses unjust. As discussed more fully above, one of Plaintiff's main concerns is the money he has expended in putting on depositions that have not gone forward. Defendants must pay the reasonable expenses that Plaintiff has expended in putting on these depositions, including the cost of the court reporter and Plaintiff's attorneys' time

spent bringing this motion and attending the depositions that did not go forward. Another of Plaintiff's concerns is the time and delay that Defendants' actions have caused and the use of Houlihan as a 30(b)(6) witness. Regarding Houlihan, Defendants have not sufficiently responded to Plaintiff's explanations that Houlihan is not an acceptable 30(b)(6) witness. Defendants also failed to raise any opposition to having a separate 30(b)(6) witness in responding to Plaintiff's confirmation email outlining a call the parties had after Defendants sent a letter regarding Houlihan. Defendants have thus waived their arguments for providing Houlihan as a 30(b)(6) witness. Regarding the delay in depositions, Defendants' counsel must contact Plaintiff's counsel within seven days from the date of this Order to set up a deposition for a 30(b)(6) witness and for Houlihan for a mutually agreeable date and time. Further non-responsiveness in scheduling and preparing for depositions will not be tolerated.

**IT IS THEREFORE ORDERED** that Plaintiff's motion to strike the answer (ECF No. 33) is **denied in part** as it relates to Plaintiff's request for the Court to recommend striking Defendants' answer. Plaintiff's motion is **granted in part** insofar as it concerns sanctions.

**IT IS FURTHER ORDERED** that Defendants must: (1) pay Plaintiff's reasonable attorneys' fees and costs in bringing this motion and for hiring a court reporter and attending the depositions that went forward as non-appearances; (2) contact Plaintiff's counsel within seven days from the date of this order—by **Monday, November 1, 2021**—to set up depositions for both a 30(b)(6) witness and for Houlihan on a mutually agreeable date and time; and (3) identify and provide a 30(b)(6) witness who is not Houlihan.

**IT IS FURTHER ORDERED** that Plaintiff shall submit an affidavit of reasonable attorneys' fees and costs in bringing this motion, in attending the depositions that went forward as non-appearances, and for hiring a court report for the depositions that went forward as non-appearances.

DATED: October 25, 2021

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE